## HAYNE v. GOULD.

## GOULD v. HAYNE.

### (Circuit Court, S. D. California. February 13, 1893.)

### No. 175.

1. TENANCY IN COMMON—PARTITION—OLIVE RANCH.

By a written agreement, made in 1886, one of two parties was to acquire the title to a certain tract of land, and the other was to cultivate it as an olive ranch, and within a stipulated time plant a certain number of trees thereon, and receive in consideration thereof title to a one-half interest in the land as tenant in common. The first party, after seeing the land in 1888, made a written agreement to complete his payments, to acquire title, and convey to the other party a one-half interest, reciting therein the fulfillment of the other party's agreement to plant trees. The first party's agent thereafter inspected the trees, and the one-half interest was then conveyed to the second party, who subsequently brought suit for partition. *Held*, that the first party's testimony that he made the conveyance of the half interest because he was deceived, and led to believe that the second party had complied with his agreement, was unavailing as a defense in the partition suit.

2. SAME—DISPUTED TITLE.

Where the title to a part of certain land held by tenants in common is merely possessory, while the title to the rest is undisputed, partition should not be granted on the complaint of one tenant, but a sale and accounting should be ordered. Code Civil Proc. Cal. § 763.

3. SAME—ACCOUNTING—NECESSARY EXPENSES OF TENANT IN POSSESSION.

A suit for the partition of an olive ranch was brought by one of its two tenants in common, who, pending the suit, incurred necessary expenses in caring for the ranch. *Held*, that the cotenant should be charged with one half such outlay, although he had given written notice that he would not be responsible for running expenses.

In Equity. Bill in a superior court of California by Benjamin S. Hayne against Charles W. Gould for partition of property owned by the parties as tenants in common. Defendant removed the cause to

this court. Heard on bill, answer, and replication and cross bill, an-
swer, and replication. Decree for a sale of the premises.

B. F. Thomas, (Stephen M. White, Edward J. Pringle, and Robert
Y. Hayne, of counsel,). for Hayne.

Jarrett T. Richards, for Gould.

ROSS, District Judge. The property involved in this suit, and
of which partition is sought by Benjamin Hayne, is that described
in the tripartite agreement referred to in the companion suit of
Hayne v. Gould, 54 Fed. Rep. 951. It is known as the "Mills Piece"
of land, containing about 207 acres, and for which W. Alston Hayne,
Jr., held a contract of purchase at the time of the execution of the
tripartite agreement between W. Alston Hayne, Jr., Charles W.
Gould, and Benjamin Hayne. That agreement was as follows:

"Memorandum of agreement made this eleventh day of March, one
thousand eight hundred and eighty-six, between Charles W. Gould, W.
Alston Hayne, Jr., and Benjamin Hayne, witnesses:

"Whereas, said Gould and said W. A. Hayne, Jr., own in common a tract
of land sometimes known as the 'Puerta del Sol Ranch,' in Santa Ynez, Santa
Barbara county, state of California, together with the houses and improve-
ments thereon, and certain personal property, such as teams, plows, imple-
ments of husbandry, etc., etc., and it is the present intention of said Gould
and said W. A. Hayne, Jr., to cultivate and plant the said tract of land with
a view to making it an olive ranch.

"And whereas, said W. A. Hayne, Jr., has agreed to buy a certain other
tract of land contiguous to the tract first above mentioned, said second-named
tract being sometimes known as the 'Mills Piece,' and containing two hundred
and seven acres of land, or thereabouts.

"And whereas, said W. A. Hayne, Jr., in pursuance of his intention of buy-
ing said Mills piece has received from the present owner of said piece an
agreement for a deed thereof, and has given therefor four notes of the face
value of six hundred dollars each, or thereabouts.

"Now, therefore, for the purpose of settling certain controversies between
the parties hereto, and for other good and valuable considerations, the parties
hereto agree as follows:

"Said W. A. Hayne, Jr., agrees to convey to said Charles W. Gould all his
right, title, and interest under the contract for the deed of said land known
as the 'Mills Piece,' and said Gould agrees to take the transfer and conveyance
of said right, title, and interest to the deed for said Mills piece from W. A.
Hayne, Jr., provided that a sound title can be secured to said Gould of and
to said Mills piece; and said Gould further agrees, provided that a sound
title can be given him as aforesaid, under the agreement made by said W. A.
Hayne, Jr., to buy said Mills piece, to acquire said title.

"Said Benjamin Hayne agrees to and with the said Gould to forthwith culti-
vate and improve the said Mills piece for the purpose of converting it into
an olive ranch; and to this end the said Benjamin Hayne agrees to devote
his whole time, attention, and energy; and when said Hayne shall have set
out on said Mills piece five thousand three year old olive trees in good condi-
tion, living, and thriving, said Gould agrees to convey to said Benjamin
Hayne one half of his interest in and to the contract for the deed to said
Mills piece, to be assigned and conveyed to said Gould by said W. A. Hayne,
Jr., as hereinabove specified.

"Said W. A. Hayne, Jr., and said Gould also agree to permit said Benjamin
Hayne to use the house and personal property now situated on said Puerta
del Sol Ranch, for the purpose of cultivating and improving the Mills piece
and the olive trees thereon to be set out.

"Said Gould also agrees to advance money to the amount of two hundred
dollars to pay for a fence around said Mills piece, in order to facilitate the
said Benjamin Hayne in the proper care and cultivation; but said Gould is

not to bear nor become liable for nor to be chargeable with any other expense whatever in the cultivation or connected with the improvement of or the care of said Mills piece, excepting only the annual taxes thereon, until after the said Benjamin Hayne shall have set out five thousand three year old trees as above specified, and shall have received a conveyance or transfer of the one-half interest in the property obtained by said Gould under the contract for the deed as above specified. And said Benjamin Hayne agrees to fence said Mills piece, and to give his note on demand for one half of the cost of said fence.

"And said Benjamin Hayne further agrees to set out five thousand good, thriving, living, three year old olive trees on said Mills piece during the planting seasons of 1886, 1887, and 1888, twenty-five hundred of said trees to be set out during the seasons of 1886 and 1887, and twenty-five hundred—being the remainder of the total five thousand trees—during the season of 1888. It being agreed, however, that if the planting seasons of 1887 and 1888, or either of them, should prove rainless, the quota of trees to be planted during those years, or either of them, may be planted in the following year; but unless the planting seasons of 1887, 1888, and 1889 should all prove rainless the five thousand trees as above specified are to be all set out before the close of the planting season of the year 1889. And if said Benjamin Hayne fails to plant the said five thousand trees as above specified within the time limited, then it is agreed by and between the said Benjamin Hayne and the said Gould that the said Benjamin Hayne shall vacate and quit the premises known as the 'Mills Piece,' and render up to said Gould quiet and peaceable possession of the same, and any and all improvements made thereon during the occupancy thereof by said Benjamin Hayne shall remain and belong absolutely to the said Gould, and all rights to the conveyance of said land or any part of it, or of the contract for the deed thereof, or any part of said contract for the deed thereof, from said Gould to said Benjamin Hayne, shall cease and determine, and the said Gould shall be discharged from each and every obligation to and with the said Benjamin Hayne accruing or arising under or by virtue of the provisions of this contract.

"This last provision is not in the nature of a forfeiture, but is intended by said Gould and by said Benjamin Hayne partly to enable said Gould to take peaceable and quiet possession of the said Mills piece, and partly to pay said Gould liquidated damages for the failure of said Benjamin Hayne to keep and perform the conditions of this contract.

"And it is further agreed between the said Gould and the said Benjamin Hayne that, until the five thousand olive trees as aforesaid shall be fully set out upon said Mills piece, the said Benjamin Hayne shall use his time and devote his energies to the cultivation of said Mills piece, to the exclusion of any engagements that will interfere with his continual care and supervision of said olive orchard, and shall receive as a salary, and not otherwise, the one half of any income that results from his cultivation and care of the said Mills piece; but in case no income or profit results from the care and use of said Mills piece by the said Benjamin Hayne, the said Benjamin Hayne is not to be entitled to any claim or demand whatever against the said Gould for salary or expenses.

"After said Hayne shall have received from said Gould a conveyance of half the Mills piece as herein contemplated, the expenses of running the ranch are to be divided share and share alike."

This suit also was commenced in one of the superior courts of the state, and was, on motion of the defendant, transferred to this court. The answer of the defendant admits the averment of the complaint that the parties are tenants in common of the property. It alleges a contract between the parties by which plaintiff should set out 5,000 good, thriving, three year old olive trees, and that when plaintiff should have set out 5,000 trees in good condition, living, and thriving, defendant would convey one half of the property to him; that after such conveyance defendant would bear one half the running

expenses of the place. It avers that, plaintiff being unable to comply with this contract, the same was modified at his request so as to permit rooted cuttings to be planted in place of trees. It avers that it was understood and agreed at the time of the making of the contract, and that it was one of the considerations and inducements therefor, that the same should be a common enterprise and speculation of plaintiff and defendant; that the property should be developed and improved as a whole; and that the property was so developed and improved and the trees planted by plaintiff with the common consent of plaintiff and defendant, as and for a single orchard or plantation, and not with reference to future segregation; and that it was with a similar understanding that the defendant consented to modify the contract in respect to the rooted cuttings. It avers that afterwards defendant conveyed one half of the property to the plaintiff; and that the understanding that the property should thereafter be developed and improved and disposed of by plaintiff and defendant in common was an inducement to and one of the considerations of the conveyance; and that the institution of this suit was in violation of the understanding. It avers that it is uncertain whether a portion of the land which is in the possession of the parties, and which is a part of the orchard, is embraced within the boundaries of the land described in the complaint, and that a judicial proceeding independent of this action would be necessary to determine positively whether such portion is within such boundaries, and to quiet and establish perfect title in plaintiff and defendant. It avers that the property is such that partition thereof cannot be had without great prejudice to the owners, and that a sale of the property ought to be adjudged. The prayer is that the plaintiff's prayer be denied, and that the defendant be dismissed, with costs. To this answer the plaintiff filed a replication.

The defendant also filed a cross bill containing substantially the same averments as his answer. The prayer of the cross bill is that a sale be made of the property, and that, in case it be found that the disputed portion is not part of the property owned by the parties, the defendant be decreed to pay to plaintiff half of what would be the enhancement in value of the premises, concerning whose boundaries there is no uncertainty, had the olive trees on the excluded strip been planted and were now growing upon it, and that such sum be made a lien on plaintiff's share; and for general relief.

The answer of the plaintiff to the cross bill denies that plaintiff ever made any contract or agreement with the defendant other than the written contract mentioned in the answer. It denies that plaintiff was not able to perform the written contract, or that he requested any modification of it; but avers that after he had fully performed it, and had set out the required number of trees, which were living and thriving when set out, some of them died without any fault of the plaintiff; that defendant refused to give plaintiff a deed until he replaced the trees which had died; and that for the sake of peace, and for no other purpose, he submitted to that exaction; and that thereupon the defendant's agent wrote him a letter, (which letter is what is referred to in the cross bill as the modification of the

contract,) and that plaintiff subsequently replaced all the trees which had died, as exacted by defendant; and that subsequently defendant gave him a written acknowledgment that he had performed all his contract, and subsequently gave him his deed. It denies that it was ever understood or agreed that the enterprise should be a common enterprise or speculation, further than as appears from the written agreement, or that the property should be or was developed or improved as a common enterprise, or for a single orchard, or without reference to a segregation, further than is shown by the writings themselves, or that such pretended agreement was an inducement to or consideration of the written contract; and plaintiff pleads the statute of limitations as to any such agreement, and denies that the partition suit was in violation of any agreement or understanding. It avers that whatever olive trees were planted upon the uncertain portion were so planted with the knowledge and consent of the defendant, and that defendant is estopped from now complaining of such planting. It denies that partition cannot be had of the property without great prejudice to the owners, or that a sale is necessary; and avers that plaintiff is without means to purchase if a sale be ordered, and that complainant is well able to purchase the whole. That there is not much demand for property of that character; that a forced sale would result in a sacrifice of the property; and that the defendant knows these facts, and seeks to have a sale for the purpose of depriving plaintiff of his interest in the property without adequate compensation. It avers that since the commencement of this suit the defendant gave plaintiff a written notice that he would no longer be responsible for the running expenses of the place; and he further avers that it was necessary, to save the property from ruin and decay, that the property should be cultivated in the same manner as it had been cultivated, and that by reason of the defendant's refusal to pay anything the plaintiff will be compelled to pay the whole expenses of running the place pending the litigation. The prayer is that the cross bill be dismissed, and that defendant be compelled to pay his share of the running expenses pending the litigation, and for general relief. To this answer the cross complainant filed the usual replication.

There is much testimony in the record as to whether the plaintiff complied with the provisions of the tripartite agreement in respect to the planting of the trees provided for, and it is strenuously urged on the part of the defendant that he did not. But that question is set at rest by the written acknowledgment of that fact made by the defendant on the 9th of August, 1889, at which time, upon plaintiff's request, he signed the following:

"The persons who signed this writing, viz. Chas. W. Gould and Benjamin Hayne, having, together with W. A. Hayne, Jr., made an agreement, which is dated March 11th, 1886, by which Benjamin Hayne was to do certain things in relation to the cultivation and improvement of certain property called the 'Mills Piece,' for the purpose of converting it into an olive ranch, and by which Charles W. Gould was to acquire the title to the said Mills piece, and convey one half of it to Benjamin Hayne upon his compliance with his above-named agreement as to the cultivation and planting of trees: Now it is agreed that Benjamin Hayne has complied with his agreement as to the cultivation and

planting of trees, and that Charles W. Gould has paid three of the four notes which were to be paid by him in order to acquire the title to said property; and he agrees to pay the remaining note when it shall become due, and thereupon to obtain a deed for the said property, and at once convey one half of it to said Benjamin Hayne.                                        Charles W. Gould.

"Dated August 9th, A. D. 1889."

In December following the defendant conveyed to the plaintiff an undivided one half interest in the property. The statement made by defendant in his testimony that he made that conveyance because he "was deceived, and led to believe that he [plaintiff] had complied with his agreements," is unavailing. He admits that he saw the property in the summer of 1888, and says that he was then "shocked" to learn the actual condition of things. Being so shocked, he was at least put upon notice, and must be presumed to have subsequently satisfied himself of the plaintiff's performance of his agreements in respect to the cultivation and planting of trees, for he in writing acknowledged that fact on the 9th of August, 1889, as has been above shown. It further appears that the month before such acknowledgment the defendant's agent and brother, George H. Gould, made a personal inspection of the trees.

As in the case of Hayne v. Gould, 54 Fed. Rep. 951, so in this case I am satisfied from the record that, at the time of entering into the agreement, neither party to it contemplated a division of the property here in question, but the building up and operation or sale of it as a whole. There was in this case, however, as in that, no distinct or specific agreement to that effect; and as there stated, the mere contemplation of the parties in respect to the venture into which they entered is not sufficient ground upon which to deny to one of the tenants in common a partition of the property if it is of such a nature as to admit of partition without great prejudice to the owners. The evidence shows that the property can be readily divided without prejudice to the interests of the owners therein, unless the circumstances relating to what is termed "the disputed piece" constitute a valid objection to such partition. That piece is a strip of land containing twenty-three and twenty-four one hundredths acres, upon which the plaintiff planted 700 of the olive trees provided to be planted by the tripartite agreement. The evidence shows that the defendant consented to such planting, but it is impossible to determine in this case whether the twenty-three and twenty-four one hundredths acres are or are not a part of the tract described in the tripartite agreement, and in the complaint herein. The case shows that, when defendant obtained the deed from Mills, the fence on the western boundary of the premises described in the complaint, which was the eastern line of the inclosure of the San Carlos de Jonata Rancho, ran some distance east of the present fence, and on or near what would be the true western line of the premises described in the complaint, measuring from the nearest government survey monument, following the courses and distances of the field notes of the government survey, and taking into consideration the area specified in the patent. The field notes, however, call for the eastern boundary line of the San Carlos de Jonata, and what that true line is is a question in dispute.

Plaintiff moved the fence back to where he claimed the true patent line to be, thus inclosing the additional twenty-three and twenty-four one hundredths acres, and with defendant's consent planted 700 of the olive trees thereon. Unless the line so claimed is the true one, the additional land so included is held only under a possessory title. Equity, I think, will not justify a partition by which one of the parties to the suit may be awarded, as a portion of the land to which he is entitled, a substantial tract, which may afterwards turn out not to be a part of the common tract to which the parties have title. There would be no equity, but much injustice, in that. See Emeric v. Alvarado, 64 Cal. 580, 2 Pac. Rep. 418. For this reason there must be a decree directing a sale of the property, and a division of the proceeds. The defendant is, I think, in equity chargeable with one half of the expenses necessarily incurred by the plaintiff in caring for the trees upon the property since the commencement of the suit. While one tenant in common cannot charge his cotenant with the expenses of a venture or a speculation concerning the property, he has a right to make such expenditures as are necessary to preserve the property from destruction. Such expenditures are for the common benefit. Freem. Coten. §§ 174, 175. Thus, if he expends money in redeeming the property from sale, he has an equitable lien on the interests of his cotenants for their several proportions. Calkins v. Steinbach, 66 Cal. 118, 4 Pac. Rep. 1103. Nor is it important that the expenses accrued after the commencement of the suit. A court of equity has the inherent power to preserve from destruction the property in litigation before it, and expenditures which the court can previously authorize, it may subsequently sanction, if in themselves proper. Roberts v. Eldred, 73 Cal. 394, 15 Pac. Rep. 16; In re Estate of Moore, 88 Cal. 4, 25 Pac. Rep. 915.

A reference will be made to the master to take an accounting of the expenses necessarily incurred by the plaintiff in caring for the property, one half of which will be charged to the defendant, and made a lien upon his interest in the property; and a decree will be entered in accordance with the views above expressed.